## THE NO. 114.

### THE TURECAMO GIRLS.
### No. 14103.

District Court, E. D. New York.
May 21, 1935.

Bigham, Englar, Jones & Houston, of New York City (Charles A. Van Hagen, Jr., of New York City, of counsel), for libelants.

Eggleston & Vander Clute, of New York City (Carl F. Vander Clute, of New York City, of counsel), for claimant.

BYERS, District Judge.

Hearing on exceptions to Commissioner's report.

The libellants' covered barge No. 114 (92 feet long, 31 feet in beam, and 10 feet in depth) having a cargo of limestone in sacks on board, was sunk as the result of being struck by the claimant's tow, on December 12, 1933, at about 3:00 a. m. The barge was properly moored alongside a pier in Staten Island.

On consent an interlocutory decree was signed which established liability, the amount of damage being left for determination.

The important exceptions have to do with the question of the value of the barge.

The repair bill was $5,900.00, and it is not contested.

■ The claimant has undertaken the burden of proving that the value of the repairs exceeded the value of the barge, and consequently under familiar law (The Havilah (C.C.A.) 50 F. 331) the latter item alone can be recovered.

The question for decision is whether the claimant has sustained this burden of proof.

It is not intended to restate in summary form all that the report contains concerning the testimony of the various witnesses. It will suffice to discuss briefly the arguments that the claimant presents, and to observe that the testimony has been examined to discover in what respects, if any, the commissioner may be thought to have been misled.

■ The report as it comes before the court is presumptively correct (rule 43½, U.S.Supreme Court Admiralty Rules [28 U.S.C.A. following section 723]) and may be rejected only if the court is satisfied that the evidence so requires.

■ The claimant called two witnesses exclusively to establish market value, and a third for that purpose and also to demonstrate "calculated value," namely, reproduction cost as estimated less depreciation.

The first two testified to sales of covered barges during the year 1934, and, as a result of these sales and their general knowledge of and familiarity with conditions in this port concerning transportation business, they gave as their opinion the market value to be $650.00 and $700.00 respectively.

The commissioner discussed the bases of this testimony, and concluded that it was not persuasive, largely because these witnesses did not demonstrate sales of barges which were in a comparable condition to that of No. 114.

A reading of the testimony does not yield affirmative reason for disagreement. It is appropriate here to state that this vessel was built in 1907, and was therefore more than 26 years old at the time of collision. The evidence shows that, during the preceding 10 years, the sum of $17,000.00 had been expended in keeping her in repair. A record of the expenditures was in evidence, and failed to elicit any comment in the report to the effect that this very considerable and unusual disbursement was caused by structural weakness or infirmity. No collision damages were thus accounted for, and, while it is not easy to understand the necessity for such costly maintenance, the effect of this evidence was to greatly enhance the difficulty confronting him who would assert that the vessel was in other than entirely satisfactory condition at the time of sinking. The witnesses characterized it as A–1 condition.

If the owner chose to maintain the barge in such a high state of repair, it is quite evident that her market value could not be shown through sales of craft which were inferior in point of preservation. After all, it was the libellants' property which was damaged, not that of someone else who chose to keep his craft in service but within a scantier scale of maintenance.

The third witness called by the claimant (Mr. R. S. Haight) gave as his opinion a market value of $1,050.00, which was one-half his "calculated" value of $2,100.-00. His testimony shows that the former figure depends for its validity upon the latter, rather than upon the sales to which he refers, which he says are "calculated for each boat as of 1931 when we sold them."

His opinion as to market value being thus remitted to his calculated value, it is found that the latter is based upon his estimated cost of reproduction of No. 114 in December of 1933, at $10,460.00.

That figure was based, in turn, upon the cost of building his own six barges in 1916, 1918 and 1920; the calculation would have been more persuasive, if the witness had ever examined the No. 114 at any time, which he did not do.

The only other evidence of reproduction cost was that of libellants' witness De Mars, who stated it at $15,900.00. He at least had inspected this barge, and, while his figures were not demonstrated, no reason appears for summarily rejecting them.

Haight had not taken into consideration the large expenditures for upkeep, because he said that they could not have enhanced the value of the barge. This must be true. While there was no enhancement, there may well have been a fairly stable maintenance of original value,

so far as renewals and repairs could accomplish that result, and it is not apparent to this court how that factor of value could have been entirely disregarded in the formulation of expert opinion.

The rule stated in Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, at page 156, 45 S.Ct. 465, 467, 69 L.Ed. 890, namely: "It is to be borne in mind that value is the thing to be found and that neither cost of reproduction new, nor that less depreciation, is the measure or sole guide. The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts"—is a broad invitation to adhere to the practical aspects of a given problem in the search for fairness in computing damages.

In addition to eliminating an important element of value, the witness computed a reproduction cost, based upon his own experience in building barges at a period antedating this loss by not less than 13 years. Doubtless he believed the figure to be correct, but no reason appears for suggesting that it was the best available evidence upon the subject. If the claimant intended to rely upon such data, it would seem that estimates current in December, 1933, could have been presented by builders of such craft.

For these reasons, it is apparent that error cannot be attributed to the report because the commissioner did not deem the claimant's evidence sufficient to meet the burden of proof resting upon it concerning the value of the barge.

*Exception No. 1* is overruled.

■ *Exception No. 2* is to the finding that the value of the barge at the time of the collision was $6,300.00. This is substantially the same question as has been discussed, and the ruling is the same.

*Exception No. 3* applies to a charge of $50.00 for removal of cargo by the yard at which repairs were made, although the wrecking company which raised and towed the barge included that item in its bill. There seems to be no reason why the claimant should in effect pay twice for the same thing. The exception is sustained.

■ *Exception No. 4* applies to the bill of Merritt-Chapman-Scott Corporation who were summoned to attend the wreck, and sent a diver down to examine it.

Their estimate for removal was higher than that of a competitor to whom the contract was awarded, but they charged for attendance, etc. Why this item should be visited upon the claimant is not made to appear. Exception sustained.

■ *Exception No. 5* challenges $12.71 listed among "lost equipment" as "overhead." There is no explanation or proof to sustain it. Exception sustained.

■ *Exception No. 6* has to do with the services of a tug in bringing the sunken barge alongside her pier after one line had parted as the result of the collision. It is fair and reasonable that this item of cost should be paid by the tort-feasor. Exception overruled.

Settle an order on notice, disposing of the exceptions as above indicated.